THE SOUTHERN OIL WORKS *v.* J. W. JEFFERSON.

1. RATIFICATION. *Principal and agent.* When a draft is received by a person claiming to act as agent for plaintiff, and the act of its reception and detention are sought to be used as circumstances in determining whether or not a contract was ratified by the principal of such alleged agent; and when on the trial of the cause the attorney of the plaintiff offered to return the draft to the defendant if he would, on his part, surrender some other benefit claimed, it is held error in the circuit court to charge the jury that they might look to the offer to deliver up the draft on the trial to show that plaintiff did not claim any benefit under the draft or the contract, and if they claim none there would be no ratification, and that the plaintiff could not avoid the effect, whatever it might be, of what is assumed to have been a retention of the draft, probably for several years, by simply making a conditional tender of it to the defendant on the trial of the case.

2. SAME. If the possession of a draft, by long acquiescence and retention, was such as to infer a ratification by the holder of the same of a contract of which it forms a part, then a conditional or unconditional offer to surrender the same on the trial would not rebut this inference.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county. C. W. HEISKELL, J.

ESTES & ELLETT for Southern Oil Works.

MYERS & SNEED for Jefferson.

FREEMAN, J., delivered the opinion of the court.

The declaration in this case is for the price and value of ninety-three bales of cotton sold and delivered by plaintiff to defendant on the 16th of March, 1874. The defendant simply filed a plea denying the

liability as claimed by the plaintiff. On this issue the case went to the jury, who found a verdict for the plaintiff, from the judgment on which there is an appeal in error to this court.

We need not go into a full statement of the facts of this case in disposing of the question on which our decision must turn. The verdict of the jury for either party would not be reversed by this court on the testimony in this record. The only question to be settled by us is, is there error of law in the charge of his Honor to the jury as applicable to the case before him, or did he improperly refuse to give instructions appropriate to the case presented by defendant's counsel.

It is conceded by defendant that the ninety-three bales of cotton were received by him from the mills of plaintiff, and by both parties that this was done in pursuance of an order given by E. C. McCombs. There is proof tending to show that before, and up to this time, said McCombs had been general manager and agent of plaintiff in the city of Memphis. It is claimed, however, by plaintiff, that his authority to so act had been revoked previously to this time by the action of the board of directors in New Orleans. From the records of the directory it would seem that authority to make contracts for the purchase of cotton seed, except on terms of payment in cash on delivery, had been withdrawn, and no power existed to make advances on contracts for future delivery. This all appears very probable, to say the least of it, from the testimony.

It appears from a contract on file, and other testimony, that about the 10th of March, 1874, the said E. C. McCombs entered into an agreement, by which he contracted for the company, signing the name of the oil company by himself "as director," with defendant Jefferson and one John D. Adams, by which they were to deliver two hundred tons of cotton seed, to be delivered during the year 1874, at ten dollars per ton.

It is claimed by defendant that McCombs promised to advance $2,500 on this contract, and drew a sterling bill for $465 on his brother, J. J. McCombs, of Liverpool, England. That this bill was not paid, the acceptance of J. W. Jefferson & Co. was, it is said, to have been discounted for the sum of $2,500, having some time to run, and the sterling bill was drawn probably as the means of raising the money for said discount. Defendant claims that when the sterling bill was not met E. C. McCombs agreed immediately to fix it up and make it good, and for that purpose gave the order for the cotton, and the same was delivered and received in pursuance of this understanding.

In short, the contention is, that the contract for the sale and delivery of the seed was valid and binding on plaintiff, as made by an agent, or at any rate, one held out by them as having authority to act for the company, and the delivery of the cotton was in fulfillment of said contract.

It is proper to add that an acceptance of J. W. Jefferson & Co. was drawn and placed in the hands of McCombs, and, it seems, afterward sent to one

Cook, of New Orleans, who had been a director of the company and was probably connected with it and its management.

This acceptance is claimed, as we have seen, to have had some connection with this contract, or its discount, to have operated as an inducement entering into its making. The case turned to a considerable extent on the question of ratification of the act of McCombs by receiving the draft, and the assumption of defendant is that it came to the possession or control of plaintiff, and the act of its reception and retention was a ratification of all contracts of which it was a part.

There was proof tending to show that the cotton seed transaction, as well as the draft for $2,500, came to the knowledge of the agents of the company before McCombs left for England, which was April, 1876. On this branch of the case it seems the draft was in the . possession of plaintiff's counsel, and during the trial it was offered to be delivered to defendant, if defendant would deliver to plaintiff the seed contract, or yield all benefit under it. The court charged the jury "that they might look to this fact, that is the offer to deliver up the draft on the trial to show that plaintiff did not claim any benefit under the draft or the contract, and if they claim none there is no ratification." This is certainly erroneous, and was conclusive of the defendant's case on the question of ratification. It was beyond question that the plaintiff's counsel had offered, on the condition specified, to deliver defendant the draft. But it was equally certain

Oil Works *v.* Jefferson.

that plaintiff could not avoid the effect, whatever it might be, of what is assumed to have been a retention of the draft for several years, probably, by simply making a conditional tender of it to defendant on the trial of the case.

If there had been ratification implied, to be inferred from long acquiescence or retaining the draft, with knowledge, as was contended by defendants, of its connection with the seed contract, then this ratification could not be rebutted by either a conditional or unconditinal offer to give up the draft on the trial. It was too late, and to allow plaintiff to hold on to the fruits of a contract, or liability growing out of it, until the exigencies of the trial exposed the probable or possible danger of doing so, and then relieve himself by tendering it back, even without condition, would have been unwarranted, but to tell the jury that such conditional tender could rebut the effect of previous conduct tending to show ratification, and preclude the idea of ratification altogether, is most palpable error. We do not deem it necessary to discuss the other questions in the case.

For the error pointed out, the case must be reversed and remanded for a new trial.